### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CANYON SUDAR PARTNERS, LLC, et al.,

                    Plaintiffs,

v.                                                  CIVIL  ACTION  NO.  3:10-1001

FAITH COLE, next friend and
on behalf of RUTH HAYNIE,

                    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Compel Arbitration and Stay the State Court Proceedings by Plaintiffs Canyon Sudar Partners, LLC, SVCare Holdings, LLC, Sava Senior Care, LLC, and SSC Equity Holdings LLC [doc. no. 2].  Also pending is a Motion to Dismiss by Defendant Faith Cole, next friend and on behalf of Ruth Haynie [doc. no. 19].  For the following reasons, the Court **GRANTS** the Motion to Compel Arbitration, **DENIES** the Motion to Stay the State Court Proceedings, and **DENIES** Defendant's Motion to Dismiss.

### I.
### FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 2010, Ms. Cole, as power of attorney for her mother, Ruth Haynie, filed a lawsuit in the Circuit Court of Cabell County, West Virginia, against Canyon Sudar Partners LLC, SVCare Holdings LLC, Sava Senior Care LLC, SSC Equity Holdings LLC, SMV Management Company LLC, SMV Huntington LLC, Annica Stansberry, John Does 1 through 10, and Unidentified Entities 1 through 10 (as to Huntington Health & Rehabilitation).  In her state

lawsuit, Ms. Cole asserts that her mother suffered personal injuries while a resident of Huntington Health & Rehabilitation Center (HHRC), a nursing home in Huntington, West Virginia.

Of the defendants named in the state lawsuit, SMV Management Company LLC, SMV Huntington LLC, and Annica Stansberry are not named as parties in the federal action. Likewise, Seventeenth Street Associates, LLC d/b/a HHRC is not named as a plaintiff in the federal action, and it is not specifically named as a defendant in the Complaint filed in state court.[1] Canyon Sudar Partners, LLC (hereinafter CSP) asserts it is the primary parent company of Seventeenth

---

[1]The Complaint was filed as an Exhibit with this Court. The style of the case includes "Unidentified Entities 1 Through 10 (as to Huntington Health & Rehabilitation)." In paragraph 18 of the state court Complaint, it provides that the Unidentified Entities

> are named insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of Ruth Haynie during her residency at Huntington Health & Rehabilitation. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of Ruth Haynie during her residency at Huntington Health & Rehabilitation.

*State Court Complaint*, at ¶ 18, in part.

Street Associates, LLC d/b/a HHRC[2] and CSP is a citizen of New Jersey and New York.[3]  Annica Stansberry is the purported administrator of HHRC.

On August 6, 2010, CSP and the other named corporate Plaintiffs filed this case and its motion requesting that this Court stay the state court action and compel arbitration pursuant to an "Agreement for Dispute Resolution Program" (DRP) signed by a representative of HHRC and

---

[2]Plaintiffs assert the organizational structure of the parent and subsidiary companies is as follows:

a.   The sole member of HHRC is SSC Huntington Operating Company, LLC.

b.   The sole member of SSC Huntington Operating Company, LLC is SSC Submaster Holdings, LLC.

c.   The sole member of SSC Submaster Holdings, LLC is Plaintiff SSC Equity Holdings, LLC.

d.   The sole member of Plaintiff SSC Equity Holdings, LLC is Plaintiff Sava Senior Care, LLC.

e.   The sole member of Plaintiff Sava Senior Care, LLC is Plaintiff SVCare Holdings, LLC.

f.   The sole member of Plaintiff SVCare Holdings, LLC is Plaintiff CSP.

*Amended Complaint to Compel Arbitration and Stay the State Court Proceedings*, at ¶ 2.

[3]CSP is a Delaware limited liability company with its two members being citizens of New York and New Jersey.

Ms. Cole.[4]  The DRP provides, in part: "**BY AGREEING TO HAVE ALL DISAGREEMENTS RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM, THE PARTIES AGREE TO WAIVE THE RIGHT TO A JUDGE OR A JURY TRIAL AND TO HAVE THE DISPUTE RESOLVED THROUGH VARIOUS STEPS, CULMINATING IN A DECISION BY AN ARBITRATOR.**" *Agreement for Dispute Resolution Program*, at 1 (bold and capitalization original).  The DRP also states that the facility "and all of our parents, affiliates and subsidiary companies, owners, officers, directors, employees, successors, assigns, agents insurers and representatives will be required to resolve disagreements pursuant to the program." *Id.* at 5 (capitalization of all words omitted).  However, the DRP specifically provides that participation in the program is voluntary and may be revoked within thirty days of admission or the date signed, whichever is later.  Additionally, it states that revocation will not adversely affect a patient's status. *Id.* at 4-5.

In her own Motion to Dismiss and in response to Plaintiffs' arguments, Ms. Cole raises a jurisdictional issue and a number of substantive legal arguments as to why Plaintiffs' motion should be denied.  The Court will address the jurisdictional issue first before addressing the substantive arguments.

---

[4]The agreement was signed by Ms. Cole, the facility administrator, and the facility witness.

## II.
## DISCUSSION

### A.
### Joinder under Rule 19

To begin, the Court recognizes that under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, there must be an independent basis for jurisdiction.[5] *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32 (1983) (stating "[t]he Arbitration Act is something of an anomaly in the field of federal-court jurisdiction.  It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise"). In this case, Plaintiffs assert that federal jurisdiction exists because there is diversity of citizenship. *See* 28 U.S.C. § 1332.  On the other hand, Ms. Cole claims that Plaintiffs purposefully chose not to include Seventeenth Street Associates, LLC, d/b/a HHRC, as well as HHRC's administrator, Ms. Stansberry, as parties to this action because their joinder will destroy diversity.[6]  Ms. Cole insists,

---

[5]Section 4 of the FAA provides, in part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4, in part.

[6]For purposes of this discussion, the Court shall assume, without deciding, that Mrs. Haynie's residency is West Virginia and diversity would be destroyed if either Seventeenth Street
(continued...)

however, that Seventeenth Street Associates and Ms. Stansberry are indispensable parties under Rule 19 of the Federal Rules of Civil Procedure and, once properly joined, this case must be dismissed for lack of jurisdiction.

A motion to dismiss pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join a party under Rule 19 is a two-step inquiry. *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir.1999). First, a court must ask "'whether a party is necessary to a proceeding because of its relationship to the matter under consideration' pursuant to Rule 19(a)." *Id.* (citing *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917-18 (4th Cir.1999)). "If a party is necessary, it will be ordered into the action. When a party cannot be joined because its joinder destroys diversity, the court [then] must determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." *Id.* (footnote and citation omitted). The party arguing that a party must be joined has the burden to "'show that the person who was not joined is needed for a just adjudication.'" *American Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (quoting 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1609 (3d ed. 2001)).

---

[6](...continued)

Associates or Ms. Stansberry are joined in this action. Defendants actually question whether Mrs. Haynie is currently a resident of West Virginia or North Carolina. Given this Court's analysis under Rule 19, the Court finds it unnecessary to resolve Mrs. Haynie's residency at this time.

"Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois*, 186 F.3d at 440 (citation omitted).  This determination is not subject to a formalistic analysis, rather the Court must consider the particular factual setting presented. *Schlumberger Indus. Inc., v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir. 1994); *see also Owens-Illinois, Inc.*, 186 F.3d at 441 ("Such a decision 'must be made pragmatically, in the context of the substance of each case, rather than by procedural formula . . . by considering 'the practical potential for prejudice' to all parties, including those not before it." (citation omitted)). In addition, the Court's determination under Rule 19(b) is equitable and left to the Court's discretion. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968) ("The decision whether to dismiss . . . must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.").  With this backdrop, the Court must determine whether Seventeenth Street Associates and Ms. Stansberry are necessary and indispensable parties under Rule 19.

In considering whether either Seventeenth Street Associates or Ms. Stansberry should be joined as a necessary party, Rule 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A)  in that person's absence, the court cannot accord complete relief among existing parties; or

(B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

        (i)    as a practical matter impair or impede the person's ability to protect the interest; or

        (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). In first considering the merits of whether Seventeenth Street Associates should be joined as a necessary party, the Court finds Ms. Cole fails to adequately explain how complete relief cannot be accorded to her if Seventeenth Street Associates is not joined in this action. Ms. Cole argues that Seventeenth Street Associates is a necessary party because it is a party to the contract. However, Ms. Cole did not name Seventeenth Street Associates as a defendant in the state court action, and there is no evidence that Ms. Cole has ever sought any relief from it. Instead, Ms. Cole seeks full relief in state court from the named corporate entities and the hospital administrator. As Seventeenth Street Associates has not been sued, any relief Ms. Cole may be entitled to receive in her state court action would not come from Seventeenth Street Associates. Thus, its absence in this case presents no impediment to Ms. Cole's claim for relief against the named entities regardless of the fact Seventeenth Street Associates may be a party to the underlying contract. Likewise, as Seventeenth Street Associates has not been sued, Ms. Cole fails to demonstrate how ruling of this federal action will impair or impede any interest Seventeenth Street Associates may have in this matter or "leave an existing party subject to a substantial risk of

-8-

incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).

Moreover, even in instances in which joint tortfeasors are named in underlying suits, it does not necessary follow that everyone named in the underlying suit must be a party to an action to enforce arbitration. For instance, in the case of nursing home administrators, such as Ms. Stansberry, courts have held that those administrators are not necessary parties under Rule 19 when another alleged joint tortfeasor seeks to enforce arbitration. The Eighth Circuit addressed this precise issue in *Northport Health Services of Arkansas, LLC v. Rutherford*, 605 F.3d 483 (8th Cir. 2010). In that case, representatives of the estates of two individuals filed tort actions in state court against the operator of a nursing home facility, two of its affiliates, and the facility's administrators. The facility and its affiliates filed an action in federal court based upon diversity of citizenship seeking to compel arbitration. *Id.* at 485. Although the nursing home administrators were not named in the federal action, the district court found diversity did not exist with the administrators in the state action and, therefore, held it did not have jurisdiction to compel arbitration. *Id.* The facility and its affiliates appealed. *Id.* at 486.

In its analysis under Rule 19, the Eighth Circuit found the representatives' arguments that the administrators are necessary parties to be inconsistent with the long-standing principal that it is unnecessary to name all joint tortfeasors as defendants in a single action. *Id.* at 491 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). The Eighth Circuit further stated that to its knowledge, "every circuit to consider the issue [in the context of arbitration] has concluded

that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration." *Id.* (citations omitted).  Therefore, the Eighth Circuit reversed the district court and directed the district court to compel arbitration. *Id.* at 491-92.

Similarly, in *Mariner Healthcare, Inc.*, No. Civ. A. 404CV243PA, 2005 WL 1711614 (N.D. Miss. July 21, 2005), the district court ruled that a nursing home administrator was not a necessary party under Rule 19 in an action brought to compel arbitration by some nursing home companies.  In doing so, the court recognized that merely because "the defendant may have asserted claims in state court against others who had some involvement in the underlying transactions does not make those others necessary parties to this action, in which the sole issue is whether the defendant is to be compelled to arbitrate its claims." 2005 WL 1711614, at *2 (citations and internal quotation marks omitted).  To put it another way, the court stated that "the issues before the court in the case at bar include whether there was a valid arbitration agreement and whether said agreement binds the defendants.  The presence of the nursing home administrator as a party to this suit to compel arbitration is unnecessary." *Id.*

Likewise, the Court finds that Ms. Stansberry is not a necessary party.  The narrow question presented in this matter is whether Ms. Cole must arbitrate her claims against the named corporate entities.  As Ms. Stansberry is not seeking to enforce arbitration, there is nothing that prohibits Ms. Cole from continuing to seek relief against her in state court.  Thus, it is unnecessary for her to be named as a party in this action.

Having determined that neither Seventeenth Street Associates nor Ms. Stansberry are necessary parties under Rule 19(a)(1), the Court's Rule 19 inquiry ends. *See Kepler Processing Co. v. New Market Land Co.*, Civil Action No. 5:08-00040, 2008 WL 4509377, *6 (S.D. W. Va. 2008) ("If a party is not 'necessary,' the inquiry ends there."); *see also Schlumberger Indus., Inc.*, 36 F.3d at 1285-86 ("Only necessary . . . [parties] can be indispensable[.]")).  Accordingly, the Court **DENIES** Ms. Cole's Motion to Dismiss on this ground.

**B.**
**Power of Ms. Cole to**
**Bind her Mother to Agreement**

Ms. Cole also argues that there is no valid arbitration agreement in this matter because she did not have the authority to bind her mother to the agreement.  Plaintiff does not contest that she signed the arbitration agreement for her mother above the words: "Signature of Legal Representative or Family Member as authorized by State law" and below language which reads: "I am the . . . responsible party, legal guardian or power of attorney of the resident and have authority to sign the agreement on . . . her behalf.  I have provided a copy of the legal documents to support my authority to sign this Agreement on behalf of the resident . . ., which is attached." *Agreement for Dispute Resolution Program*, at 7.  However, she states she did not meet the legal requirements of being a "health care surrogate" under West Virginia law and, therefore, she had no legal authority to bind her mother to the agreement.

Pursuant to West Virginia Code § 16-30-8(a), "[w]hen a person is or becomes incapacitated, the attending physician or the advanced nurse practitioner . . . shall select, in writing, a surrogate.  The attending physician or advanced nurse practitioner shall reasonably attempt to

-11-

determine whether the incapacitated person has appointed a representative under a medical power of attorney . . . ." W. Va. Code § 16-30-8(a), in part.  When there is no authorized or capable representative willing to serve as a medical power of attorney, "the attending physician or advanced nurse practitioner is authorized to select a health care surrogate.  In selecting a surrogate, the attending physician or advanced nurse practitioner must make a reasonable inquiry as to the existence and availability of a surrogate . . . ." *Id.*, in part.  The order of priority of persons to consider in the absence of a medical power of attorney or guardian is, first, the person's spouse and, second, the person's adult children. *Id.*; *see also* W. Va. Code 16-30-8(b) (providing, in part, "[a]fter inquiring about the existence and availability of a medical power of attorney representative . . . and determining that such persons either do not exist or are unavailable, incapable or unwilling to serve as a surrogate, the attending physician or an advanced nurse practitioner shall select and rely upon a surrogate in the order of priority set forth in subsection (a)").

In support of her position, Ms. Cole argues that Mrs. Haynie had appointed her husband, Ewing P. Haynie, Jr., as her Medical Power of Attorney to make health care decisions for her in the event she is unable to make such decisions.  Ms. Cole attached a copy of the Medical Power of Attorney document to her Motion to Dismiss.  The document further provides that, if her husband is "unable to perform" his duties, she then appoints her daughter, Ms. Cole, as her "substitute medical power of attorney."  Ms. Cole asserts that Plaintiffs have failed to establish that Mr. Haynie was "unable to perform" his duties at the time Ms. Cole signed the arbitration agreement.  Thus, Ms. Cole could not have been her mother's Medical Power of Attorney, and as

Mrs. Haynie appointed her husband as her Medical Power of Attorney, no health care surrogate should have been appointed.

Plaintiffs respond by stating that Ms. Cole's argument is disingenuous. Plaintiffs note that Ms. Cole admitted her mother to HHRC and signed as the "Responsible Party." She also signed the DRP which contains the arbitration agreement. Thereafter, she discharged her mother from HHRC against physician's orders and admitted her into a hospital in North Carolina, where Ms. Cole resides. Ms. Cole further filed suit in state court and stated she is acting as her mother's power of attorney.

Additionally, a form to select a health care surrogate was completed. The form, entitled "SELECTION OF A HEALTHCARE SURROGATE (in accordance with the West Virginia Health Care Surrogate Act)," was signed on September 23 and 24, 2009, and states that it is to be used for an incapacitated patient who does not have a Medical Power of Attorney representative available and willing to serve. Both Mr. Haynie and Ms. Cole are listed as potential surrogates, with Ms. Cole listed as the individual best qualified to act as a surrogate. Ms. Cole's name also appears on the second page as the surrogate, with the words "per telephone consent" written above the surrogate's signature line. There also is a signature above the physician's signature line. Given all this information, Plaintiffs argue it would be unfair for this Court to now find Ms. Cole lacked authority to act on her mother's behalf.

Plaintiffs further point specifically to language of the Durable Power of Attorney to show that Ms. Cole had authority from her mother to sign the arbitration agreement.  In the Durable Power of Attorney signed by Mrs. Haynie in 2003, she appointed her "husband, **EWING P. HAYNIE, JR., and . . . [her] daughter, Faith Anne Cole, as substitute** . . . [as her] true and lawful attorney-in-fact[.]" *Durable Power of Attorney*, at 1 (bold original).  In the document, Mrs. Haynie gave her attorney in fact broad discretion to sign any contract or other paper and "do all such other acts, matters, and things in relation to all or part of or interest in [her] . . . affairs . . . as . . . [she herself] might or could do if acting personally." *Id.* at 1-2 (emphasis original).  Plaintiffs point to the fact that there is no language in the Durable Power of Attorney which restricts when Ms. Cole may act as a substitute.[7]  Thus, Plaintiffs assert Ms. Cole clearly was acting within her authority when she signed the arbitration agreement.  Moreover, Plaintiffs point to the fact that Ms. Cole affirmatively represented that she had such power when she signed the agreement.

Upon consideration of the issues, the Court agrees with Plaintiffs.  First, the Court recognizes that, unlike in the Medical Power of Attorney which was signed on the same day, there is no language requiring Mr. Haynie to be unavailable in order for Ms. Cole to step in and act as the substitute Durable Power of Attorney for her mother.  Indeed, it is exactly how Ms. Cole represented herself by signing the arbitration agreement above the line which stated she was the legal representative or family member authorized by state law to sign the document on her mother's behalf.  Second, the Court finds no merit to Ms. Cole's contention that her signature on the

---

[7]Plaintiffs compare this language to that in the Medical Power of Attorney document signed on the same day which limits Ms. Cole's ability to act as substitute to those times in which Mr. Ewing  is "unable to perform the following duties[.]" *Medical Power of Attorney*, at 1.

arbitration agreement by itself is insufficient, and the Court should find that Mr. Haynie's signature was required for the agreement to be valid. There is nothing in the Durable Power of Attorney that requires dual signatures. In fact, it would make no sense to give Ms. Cole the authority to act as a substitute under the Durable Power of Attorney if it still required Mr. Haynie to act as his wife's representative in every decision made pursuant to the document. Under Ms. Cole's argument, the substitute becomes completely useless. Third, the Durable Power of Attorney broadly gives the appointed representatives the authority "to sign any . . . obligation, contract, or other paper" on Mrs. Haynie's behalf and "to do all such other acts, matters, and things in relation to all or any part of or interest in . . . [Mrs. Haynie's] affairs . . . of any kind or description . . . as . . . [she herself] might or could do if acting personally." *Durable Power of Attorney*, at 1-2. Thus, the Durable Power of Attorney clearly gave Ms. Cole the authority to sign the arbitration agreement. Fourth, although the parties argue extensively whether or not Ms. Cole was authorized to act as Mrs. Haynie's Medical Power of Attorney, the Court finds it need not resolve the issue. For purposes of whether or not the arbitration agreement is sufficient, the Durable Power of Attorney clearly gave her such authority and she acted consistent with that authority in signing the document. Accordingly, the Court **DENIES** Ms. Cole's argument that she lacked authority to bind her mother to the agreement.[8]

---

[8]In deciding to deny Ms. Cole's motion to dismiss on this ground, the Court notes that Rule 12(b)(6) does not require this Court to consider a motion to dismiss as a motion for summary judgment simply because exhibits are attached to the motion and are considered by the court. *Pueschel v. U.S.*, 369 F.3d 345, 354 n.3 (4th Cir. 2004). Instead, the Rule only requires conversion when the motion or exhibits "present matters outside the nonmoving party's pleadings and the district court does not exclude such matters." *Id.* (citing, in part, Fed. R. Civ. P. 12(b)(6) (providing that "[i]f, on a motion . . . to dismiss . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 n. 7 (4th Cir.1988) (noting that the district court's reliance on attachments to a motion to dismiss did not convert the

(continued...)

**C.**
**Public Policy, West Virginia Law**
**and Federal Preemption**

The next argument made by Ms. Cole is that the arbitration clause is contrary to West Virginia law and against public policy.  Specifically, Ms. Cole asserts West Virginia Code § 16-5C-15(c) prohibits arbitration clauses with nursing home residents.  In relevant part, this section provides:

> Any nursing home that deprives a resident of any right or benefit created or established for the well-being of this resident by the terms of any contract, by any state statute or rule, or by any applicable federal statute or regulation, shall be liable to the resident for injuries suffered as a result of such deprivation. . . .

> Any waiver by a resident or his or her legal representative of the right to commence an action under this section, whether oral or in writing, shall be null and void as contrary to public policy.

---

[8](...continued)
motion into one for summary judgment because "the facts to which the court so referred were either alleged in the amended complaint or contained in the exhibits thereto")).  In this case, the Amended Complaint to Compel Arbitration and Stay the Court Proceedings alleges that Ms. Cole is the health care surrogate and power of attorney for Mrs. Haynie and that she signed the Admission Contract as the "Responsible Party" and "Surrogate Decisionmaker."  When Plaintiffs filed this action, they attached signed copies of the Resident Admission and Financial Agreement and the Agreement for Dispute Resolution Program to the Complaint.

W. Va. Code § 16-5C-15(c).[9]  On the other hand, Plaintiffs assert that this section is preempted by

_____

[9]This subsection provides in full:

> (c) Any nursing home that deprives a resident of any right or benefit created or established for the well-being of this resident by the terms of any contract, by any state statute or rule, or by any applicable federal statute or regulation, shall be liable to the resident for injuries suffered as a result of such deprivation. Upon a finding that a resident has been deprived of such a right or benefit, and that the resident has been injured as a result of such deprivation, and unless there is a finding that the nursing home exercised all care reasonably necessary to prevent and limit the deprivation and injury to the resident, compensatory damages shall be assessed in an amount sufficient to compensate the resident for such injury. In addition, where the deprivation of any such right or benefit is found to have been willful or in reckless disregard of the lawful rights of the resident, punitive damages may be assessed. A resident may also maintain an action pursuant to this section for any other type of relief, including injunctive and declaratory relief, permitted by law. Exhaustion of any available administrative remedies may not be required prior to commencement of suit hereunder.

> The amount of damages recovered by a resident, in an action brought pursuant to this section, shall be exempt for purposes of determining initial or continuing eligibility for medical assistance under article four, chapter nine of this code, and may neither be taken into consideration nor required to be applied toward the payment or part payment of the cost of medical care or services available under said article.

> Any waiver by a resident or his or her legal representative of the right to commence an action under this section, whether oral or in writing, shall be

(continued...)

the FAA and, therefore, it incapable of voiding the arbitration clause at issue in this case.

Section 2 of the FAA declares, in part, that written arbitration provisions in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2, in part.  This section operates as a declaration of a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement with the coverage of the Act." *Moses H. Cone*, 460 U.S. at 24.  This body of law establishes and governs the duty parties have to honor their arbitration agreements. *Id*. at 25 n.32.  Unless an "agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract[,]'" it shall be enforced. *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting 9 U.S.C. § 2, in part); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984) (stating there are "only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written . . . contract 'evidencing a transaction involving commerce' and such clauses may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract'" (quoting, in part, 9 U.S.C. § 2; footnote omitted).  Indeed, this national policy favoring arbitration "'foreclose[s] state legislative attempts to undercut the enforceability of arbitration

---

[9](...continued)
     null and void as contrary to public policy.

W. Va. Code § 16-5C-15(c).

agreements.'" *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quoting *Southland Corp.*, 465 U.S. at 16).  In addition, "[t]he FAA's displacement of conflicting state law is 'now well-established[.]'" *Id.* (quoting *Allied Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272 (1995)).

Ms. Cole argues that § 16-5C-15(c) fits within the limitation of the FAA because it is general contract law.  However, the Court disagrees and finds persuasive the recent decision by Supreme Court of Illinois in *Carter v. SSC Odin Operating Co.,* 927 N.E.2d 1207 (Ill. 2010).  In *Carter*, the court was confronted with the issue of whether provisions contained in the Illinois Nursing Home Care Act were preempted by the FAA.  As here, one provision provided that "[a]ny waiver by a resident or his legal representative of the right to commence an action under Sections 3-601 through 3-607, whether oral or in writing, shall be null and void, and without legal force or effect." 210 ILCS 45/3-606 (West 2006).  The other Section of the Act provided that "[a]ny party to an action brought under Sections 3-601 through 3-607 shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to commencement of an action, shall be null and void, and without legal force or effect." 210 ILCS 45/3-607 (West 2006).  The plaintiff in *Carter* argued, in part, the public policy underlying these antiwaiver provisions "is a generally applicable defense to all contracts in Illinois and therefore that policy is 'grounds as exist at law . . . for the revocation of any contract' sufficient to negate FAA preemption." 927 N.E.2d at 1212 (quoting 9 U.S.C. § 2).  The court disagreed.

In discussing the issue, the Illinois Supreme Court found the statutory provisions at issue required that disputes be resolved in a non-arbitral forum. *Id.* at 1218.  The fact the

-19-

provisions did not specifically mention arbitration is of no consequence. As explained by the court, it is clear that "state statutes are preempted by the FAA if the statutes as applied preclude the enforcement of federally protected arbitration rights, regardless of whether the state statutes specifically target arbitration agreements." *Id.* Moreover, the court stated "the antiwaiver provisions of the Nursing Home Care Act purport to invalidate arbitration agreements in a specific type of contract-those involving nursing care-and for that reason alone they are not a defense generally applicable to 'any contract.'" *Id.* at 1219. The statutes "are merely pro-judicial forum legislation that is the 'functional equivalent' of antiarbitration legislation, which is preempted by the FAA and the holding in *Southland*." *Id.* The court explained the savings clause in § 2 of the FAA is preserved for those "general contract defenses such as lack of mutuality, lack of consideration, fraud, duress, unconscionability, and the like, that can truly apply to any contract." *Id.* at 1220. To the contrary, the court concluded that the antiwaiver provisions in the Nursing Home Care Act did not fit within the meaning of the savings clause as a ground that "'exit[s] at law or in equity for the revocation of any contract[.]'" *Id.* (quoting 9 U.S.C. § 2).[10]

---

[10]Ms. Cole argues that *Carter* was wrongly decided, and this Court should follow the reasoning of *Carter v. SSC Odin Operating Co.*, 885 N.E.2d 1204 (Ill. App. Ct. 2008), the lower court's decision which was reversed by the Illinois Supreme Court. In part, Ms. Cole asserts that the Illinois Supreme Court relied upon *Sprietsma v. Mercury Marine*, 757 N.E.2d 75 (2001), which was subsequently reversed by the United States Supreme Court. *See Spietsma v. Mercury Marine*, 537 U.S. 51 (2002). However, this Court finds the United States Supreme Court's reversal of *Spietsma* does not compromise the holding in *Carter* by the Illinois Supreme Court. First, the Court notes that *Spietsma* was reversed over seven years before the Illinois Supreme Court issued its decision in *Carter*. Clearly, the court was aware of that fact. Second, the court's citation to *Spietsma* in *Carter* was very limited to some general legal principles, while the court relied heavily upon those Supreme Court cases which were focused on the preemptive force of the FAA. As this Court finds the decision by the Illinois Supreme Court persuasive, it finds no reason why it should reject that decision in favor of the lower court's decision which the Illinois Supreme Court rejected.

In *Triad Health Management of Georgia, III, LLC v. Johnson*, 679 S.E.2d 785 (Ga. Ct. App. 2009), the Court of Appeals of Georgia reached a similar decision.  In *Johnson*, the court was confronted with a Georgia statute which provided that "'no agreement to arbitrate shall be enforceable unless the agreement was made subsequent to the alleged malpractice and after a dispute or controversy has occurred and unless the claimant is represented by an attorney at law at the time the agreement is entered into.'" 679 S.E.2d at 789 (quoting OCGA § 9-9-62).  In the case, the administrator of an estate brought a medical malpractice action against a nursing and rehabilitation center. *Id.* at 787.  An agreement to arbitrate was signed prior to the alleged malpractice, so presumably it would be unenforceable under Georgia law.  *Id*. at 789.  However, the court found the statute was preempted under the FAA because it "singles out a specific class of arbitration agreement and restricts the enforcement thereof counter to the liberal federal policy favoring arbitration agreements." *Id*. at 790 (internal quotation marks and citations omitted). Moreover, the court recognized that a defense based upon the statute "is not a generally applicable contract defense." *Id*.  Thus, the court held the statute preempted under the FAA. *Id.*; *see also Estate of Ruszala v. Brookdale Living Cmtys, Inc.*, 1 A.3d 806, 818-22,  (N.J. Super. Ct. App. Div. 2010) (finding a New Jersey statute rendering unenforceable any waiver or limitation of the right to sue between a patient and a nursing home is preempted by the FAA, but the contracts were ones of adhesion and certain provisions were unconscionable).

In support of her position, Ms. Cole cites several cases in which this Court finds are clearly distinguishable from the case at hand.  First, Ms. Cole cites *Fitzhugh v. Granada Healthcare and Rehabilitation Center, LLC*, 150 Cal. App.4th 469, 58 Cal. Rptr.3d 585 (Ct. App.

2007).  In that case, the arbitration provisions at issue expressly *excluded* claims brought against a facility for violations of California's Patients Bill of Rights and, thus, were not subject to arbitration.[11] 150 Cal. App.4th at 472 & 474, 58 Cal. Rptr.3d at 586 & 588.  Likewise, the court found the wrongful death action brought by the patient's husband and sons was not subject to the arbitration agreement because there was no evidence they waived their personal rights to a jury trial.150 Cal. App.4th at 474, 58 Cal. Rptr.3d at 588. To the contrary, in the case at hand, the DRP expressly applies to "all disagreements" and  "any disagreements about care and other services" provided by the nursing home. *Agreement for Dispute Resolution Program*, at 1.  Thus, *Fitzhugh* is distinguishable.

Similarly, Ms. Cole's citations to *Place at Vero Beach, Inc. v. Hanson*, 953 So.2d 773 (Fla. Dist. Ct. App. 2007)*, and *SA - PG Ocala, LLC v. Stokes*, 935 So.2d 1242 (Fla. Dist. Ct. App. 2006), is unpersuasive because neither of those cases even discuss the FAA.  Finally, Ms. Cole cites *Bruner v. Timberlane Manor Limited Partnership*, 155 P.3d 16 (Okla. 2007).  However, in *Bruner,* the court denied a motion to compel arbitration, at least in part, on the fact that the arbitration agreement itself provided Oklahoma law was to govern. 155 P.3d at 32.  On the other hand, the agreement at issue in the present case specifically states that the FAA "will control and applies to the arbitration of disagreements between the parties and the parties agree to incorporate such laws into this Agreement."[12] *Agreement for Dispute Resolution Program*, at 3-4.  Accordingly,

---

[11]The court also found that claims for violations of the Patients Bill of Rights survive the death of the patient. 150 Cal. App.4th at 474, 58 Cal. Rptr.3d at 588.

[12]The agreement goes on to state that "[i]f it is determined that the FAA does not apply to
(continued...)

the Court finds none of the cases cited by Ms. Cole preclude preemption by the FAA in the present case.

Lastly, in order for preemption to apply, the Court must consider whether the arbitration agreement involves "a transaction involving commerce." 9 U.S.C. § 2. Under § 2, "the word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *Allied Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). In *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003), the Supreme Court explained that the FAA's reach extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." 539 U.S. at 56-57 (internal quotation marks and citations omitted).

In this case, Plaintiffs assert that they meet the interstate commerce requirement. In support of their position, they attached a copy of an affidavit signed by Annica Stansberry stating that HHRC's medical supplies and equipment are purchased from vendors outside of West Virginia the majority of the time. *Affidavit of Annica Stansberry*, at ¶ 10. Likewise, she stated that foodstuffs and cleaning supplies are purchased from out-of-state vendors. *Id*. at ¶¶ 9 & 12. Ms. Stansberry also averred that Mrs. Haynie's care was paid for by the federal Medicare program and requests for payments were sent to South Carolina. Given these factors, Plaintiffs assert the interstate commerce claim is met. *Id*. at 95. The Court agrees.

---

[12](...continued)
arbitration under this Agreement, the parties agree to resolve any disagreements through arbitration under control of state law." *Agreement for Dispute Resolution Program*, at 4.

Courts which have considered similar evidence have found it sufficient to fulfill the interstate commerce requirement. For instance, in *Triad Health Management of Georgia*, the Court of Appeals of Georgia held that evidence of out-of-state supply purchases and insurance providers was sufficient to show a contract involving interstate commerce. 679 S.E.2d at 787-78. Similarly in *Estate of Ruszala*, the Superior Court of New Jersey found the facilities' purchases of out-of-state supplies, food, medicine, and equipment left "little doubt that the residency agreements at issue . . . involve interstate commerce." 1 A.3d at 817; *see also Owens v. Coosa Valley Health Care, Inc.*, 890 So.2d 983, 987-88 (Ala. 2004) (finding testimony that the majority of supplies and equipment were purchased by the nursing home from out-of-state vendors and the majority of its payments came from Medicaid and Medicare were sufficient to show interstate commerce); *Rainbow Health Care Center, Inc.*, 2008 WL 268321, at 5 (holding that buying supplies from out-of-state vendors, standing alone, is enough to show a contract involving interstate commerce). In this case, the Court finds Plaintiffs likewise have met their burden with respect to the interstate commerce requirement.[13] Thus, in light of this broad policy favoring arbitration and for the other reasons stated above, this Court finds that application of West Virginia Code § 16-5C-15(c) in this case is preempted by the FAA.

_____

[13] In *Bruner*, the Supreme Court of Oklahoma determined that a nursing home's purchase of out-of-state supplies was insufficient to demonstrate interstate commerce. 155 P.3d at 31. Additionally, it declined to find that the receipt of Medicare and Medicaid funds by a state agency is sufficient. *Id.* To the extent *Bruner* would find the evidence of out-of-state purchases in this case insufficient, the Court disagrees and declines to adopt *Bruner's* reasoning. Likewise, even if the Court were to set aside the issue of whether the receipt of Medicare payments could met the interstate commerce test, the sufficiency of the other evidence, standing on its own, meets the interstate commerce requirement. *See Rainbow Health Care Center, Inc.*, 2008 WL 268321, at 5-6 (reaching similar conclusion as this Court).

**D.**
**Compelling Arbitration and**
**Staying the State Court Proceedings**

Having found preemption exits, the last issues which must be addressed are whether arbitration should be compelled pursuant to 9 U.S.C. § 4 and whether the Court should stay the state court proceedings.  To compel arbitration, the Fourth Circuit has stated that "the plaintiff must allege (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).  Here, the Court finds that all four elements are satisfied.

First, it is clear that there is a dispute between the parties as Ms. Cole has filed suit against Plaintiffs and others in the Circuit Court of Cabell County.  Second, the arbitration agreement at issue covers all disagreements between the parties.  Third, as stated above, the Court finds that the agreement is related to interstate commerce.  Fourth, Ms. Cole has refused to arbitrate the issues raised.  Therefore, the Court **GRANTS** the Motion to Compel Arbitration.

As to the issue of a stay, this Court recently explained in *Galloway and Associates, PLLC v. Fredeking & Fredeking Law Offices, LC,* No. 3:10-0830, 2010 WL 3955790 (S.D. W. Va. Oct. 8, 2010), that enjoining a state court proceeding "raises serious concerns of federalism and comity and requires us to consider the limitations imposed by the Anti-Injunction Act" contained within 28 U.S.C. § 2283. 2010 WL 3955790, at *8 (internal quotation marks and citation omitted).

Section 2283 provides that there are only three instances in which a federal court may grant a stay of a state court proceeding and those occur when it is "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.[14]  "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." 2010 WL 3955790, at *8 (internal quotation marks omitted; quoting *Atl. Coastline R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)).   The Court in *Galloway* further recognized that there was "no binding or persuasive authority suggesting that a district court must-or even may-grant a stay of *state* court proceedings in conjunction with a motion to compel arbitration under § 4 of the FAA[,]" but there is some support for enjoining a party "from *prosecuting* a claim in a parallel state court proceeding." *Id.* (italics original; citations omitted).

In this case, the Court finds that none of the exceptions under § 2283 apply and, to the extent this Court may have authority to enjoin Ms. Cole from prosecuting her claims against Plaintiffs in this case in the state court action, this Court, as in *Galloway*, declines to do so.  The Court fully expects that Ms. Cole will refrain from pursing those claims which are subject to the motion to compel.  Nothing in this Memorandum Opinion and Order should be interpreted, however, as preventing her from proceeding in her state action against those defendants who are not a party to this Motion to Compel Arbitration.

---

[14]Section 2283 provides, in full "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

**III.**
**CONCLUSION**

Accordingly, for the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Compel Arbitration, **DENIES** their Motion to Stay the State Court Proceedings [doc. no. 2], and **DENIES** Defendant's Motion to Dismiss [doc. no. 19].  The Court further **DIRECTS** that this case be administratively closed pending such arbitration.


The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.


ENTER:        March 29, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE